

Attorneys at Law

Allen B. Roberts
t  212.351.3780
f  212.878.8600
ARoberts@ebglaw.com

April 29, 2021

**VIA ECF**
The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

        Re: *LaBelle v. Barclays Capital Inc.*, 19-CV-3800 (JPO) (GWG)
            Opposition to Plaintiff's April 22, 2021 Letter Seeking to Compel Discovery

Dear Judge Gorenstein:

      We write on behalf of Defendant Barclays Capital Inc. ("Barclays") in response to the letter filed with this Court by Plaintiff Brian LaBelle ("Plaintiff") on April 22, 2021 (ECF No. 120) seeking an Order from the Court compelling unduly burdensome discovery not proportional to the needs of this case.

      As discussed in more detail below, what Barclays has done, what it has agreed to do and what it has now offered to do, more than meet its obligations to engage in a reasonable search for relevant discovery proportional to the needs of this case. Where Plaintiff has identified specific relevant information or topics he claims were not addressed by Barclays' substantial prior ESI searches and document productions, Barclays has agreed to conduct reasonable supplemental searches in an effort to resolve disputes and move toward completion of document discovery. Depositions in this matter have begun and Plaintiff's deposition, which is not dependent on the ESI Searches, will be conducted on May 25, 2021. The time has come to put an end to Plaintiff's ever-expanding ESI discovery demands in this case and move toward a completion of fact discovery in this now two-year old litigation. Accordingly, we request that the Court deny Plaintiff's motion to compel (for the foregoing reasons and those set forth below) and Order the completion of ESI as proposed in this letter.

**I.   ESI Discovery from October 2019 to Present.**

        A.   Barclays has already produced significant ESI discovery.

      As Your Honor is aware from prior correspondence and related conferences with the Court, Barclays' searches for and production of ESI have been ongoing since October 2019. During the intervening 18 months, Barclays has consistently and proactively worked to reach agreement on

issues related to ESI Searches—each time taking the lead to craft searches aimed at locating documents relevant to the claims and defenses in this case, with due regard for the synergistic principles of relevance and proportionality, as required under Fed. R. Civ. P. 26.

To that end, Barclays completed searches for documents as Ordered by Judge Aaron (ECF Nos. 36 and 57) across 15 key custodians having central involvement in the events underlying Plaintiff's allegations and Barclays' defenses thereto, including but not limited to the Project Twist and Project Tweed investigations, the Client 1 and Client 2 Transactions, and the decision to terminate Plaintiff's employment, as set forth in **Appendix A**. Barclays completed its production of documents related to these searches on April 10, 2020.

In addition, following the parties' August 19, 2020, conference with the Court, and pursuant to the Court's Order, Barclays searched for and produced documents responsive to Plaintiff's Document Request No. 71, which sought "[a]ll emails between Larry Kravetz and Jessica Itzkowitz concerning Barclays' mandatory block leave policy, including but not limited to any e-mails discussing the use of personal phones to evade violating Barclays' mandatory block leave policy," pursuant to the following search:[1]

| Custodian(s) | Sources | Time Frame | Search Terms |
| --- | --- | --- | --- |
| Itzkowitz | Barclays Email | 1 Jan 2012- 4 Apr 2014 | ("Kravetz" AND ("MBL" or "Mandatory Block Leave")) |

Completion of the foregoing searches has yielded a production of over 16,000 pages of documents, in addition to the documents produced from non-ESI sources, as well as Barclays' reproduction of documents produced to the SEC. In total, Barclays has produced nearly 260,000 pages of documents in this litigation.

  B. <u>Barclays has agreed to additional targeted ESI to address Plaintiff's specific concerns.</u>

In response to Plaintiff's desire to continually expand the scope of electronic discovery, raised in his July 16, 2020 letter filed with the Court (ECF No. 89) and during the parties' August 19, 2020 Court conference (ECF No. 96), Barclays again took the lead and, on September 29, 2020, proposed Supplemental ESI Searches ("Barclays' Supplemental ESI Searches") for new custodians Dennis Bolles, Amanda Cohen and Anne Marie De Voti and additional ESI searches for custodians Martin Attea, Larry Kravetz, Brian Wiele, and Plaintiff in a good faith attempt to resolve ongoing discovery disputes. More specifically, Barclays sought to address Plaintiff's contention that he did not have adequate discovery related to the performance reasons underlying the termination of his employment. In response to that concern, Barclays carefully crafted additional searches using search terms and additional custodians appropriately anchored to the

---

[1] As discussed further below, Plaintiff was dissatisfied with this search. In an effort to resolve the ongoing discovery dispute and conditioned on bringing discovery to a close in this matter, Barclays has offered to engage in another search of emails between Mr. Kravetz and Ms. Itzkowitz, notwithstanding the fact the interactions in question occurred well before Plaintiff had even become employed at Barclays.

discovery topics Plaintiff had identified to both Barclays and the Court as allegedly inadequately explored.

In response, Plaintiff provided on November 19, 2020 "Plaintiff's Proposed ESI Searches" in which Plaintiff continued to refuse to target his proposed searches in any meaningful way. For example, certain proposed searches were devoid of any limiting proportionate search terms other than minor variations on Plaintiff's name and would necessarily return every single communication between Plaintiff and his supervisors over a two-year period, regardless of relevance. In correspondence dated December 7, 2020, and during the parties' meet and confer on December 8, 2020, Barclays explained that Plaintiff's newly proposed searches were not adequately tailored to search for ESI in areas not otherwise addressed by Barclays through its prior ESI Searches (as modified and Ordered by Judge Aaron) or Barclays' Supplemental ESI Searches proposed on September 29, 2020.

On December 11, 2020, Barclays requested that Plaintiff identify specific topics or areas of inquiry that Plaintiff believed had not been adequately addressed by either Barclays' prior ESI searches or Barclays' Supplemental ESI Searches that could generate corresponding search terms beyond simply Plaintiff's name or Larry Kravetz's name. Plaintiff did not respond. Instead, on December 15, 2020, he filed a letter with the Court asking for a pre-motion conference. During the parties' subsequent conference with the Court on December 21, 2020, Your Honor encouraged the parties to continue to work to resolve outstanding ESI issues.

Subsequently, via correspondence to Plaintiff's counsel dated December 23, 2020, Barclays continued to work diligently toward that end, stating:

> As to the ESI, we are happy to have a meet and confer, but, again, to modify our proposal, we need to know what Plaintiff needs – specifically – so we can craft additional search terms. To be clear, are you saying there are no additional search terms Plaintiff can or will suggest that can be searched in conjunction with the Plaintiff's or Mr. Kravetz's name(s) or the single terms "Twist" or "Tweed" (as set forth in your November 19, 2020 proposal) to create appropriately targeted and proportional searches?
>
> If Plaintiff's position is, at this point in the litigation, that additional ESI searches for a single word – connected to no other search terms – across 19 custodians for varying time frames is appropriate, please confirm that is your position.

In response to Barclays' December 23, 2020, correspondence, Plaintiff stated, in relevant part: "As to the ESI and the issues with Defendant's review and production from the initial ESI search, I don't have any additional information to provide you in response to your request. As far as I am concerned the ball is in your court." The parties then continued discussions related to the scope of ESI during a meet and confer on December 28, 2020, and in subsequent email correspondence.

3

After Plaintiff repeatedly declined to propose search terms, Barclays once again took up the mantle on January 22, 2021, by crafting additional searches and offered to expand upon its searches beyond those set forth in its September 29, 2020 proposal to address Plaintiff's ongoing requests for additional discovery regarding Plaintiff's internal complaints and termination for custodians Dennis Bolles, Amanda Cohen and Anne Marie De Voti, as denoted by the search highlighted in the chart below.[2]

While correspondence with Plaintiff regarding the appropriate scope of additional ESI Searches was ongoing, and in order to prevent further delays of completion of the time-consuming ESI search and review process, Barclays commenced its searches and review of the documents pursuant to the chart below as of March 9, 2021. Barclays will be producing any additional non-privileged responsive documents identified pursuant to these searches. The searches below were specifically formulated to address Plaintiff's expressed concern that he did not have adequate discovery regarding his performance and related reasons for his termination from employment.

| **Custodian(s)** | **Source(s)** | **Time Frame** | **Proposed Search Terms** |
|---|---|---|---|
| LaBelle | Barclays email and Bloomberg Chat | 4/1/17 -6/1/17 | ("225 Park" OR "233 Park" OR "225-233") AND ("balance sheet*") |
| LaBelle | Barclays email and Bloomberg Chat | 2/1/18 -4/1/18 | Willis AND (premarket* OR "pre-market*" OR "pre market" OR "pre marketing" OR "pre marketed" OR misrep* OR premature* OR RBC OR Blackstone OR stack OR "capital structure" OR "Moody's") |
| LaBelle | Barclays email and Bloomberg Chat | 7/1/17 –9/1/17 | (CS01 OR CSO1) AND (*ercole* OR cap OR limit) |
| LaBelle Kravetz | Barclays email and Bloomberg Chat | 5/1/18-7/10/18 | AIG AND dinner AND Christiana |
| Attea LaBelle Wiele | Barclays email and Bloomberg Chat | 2/15/18-3/15/18 | IBDC AND recus* OR "3/1/2018" |

---

[2] This set of facts largely repeats those presented to Judge Aaron in advance of the parties' October 25, 2019 conference, the consequence of which was Judge Aaron ordering that Barclays could proceed with its reasonable search terms. *See* ECF No. 37, Tr. 17:4-7 (THE COURT: "You can't be yelling from the mountain tops that you want document production and then not cooperate with them in coming up with the search terms . . . .").

4

| Attea | Barclays email and Bloomberg Chat | 1/1/18 -8/1/18 | (Brian OR LaBelle OR "La Belle" OR BLB) AND (attend* OR absen* OR awol OR performance OR investigat* OR promot* OR terminat* OR compensat* OR bonus or (compliance w/5 (complain* OR report* OR Larry OR Kravetz OR Eric OR Wu))) |
|---|---|---|---|
| Attea Wiele | Barclays email and Bloomberg Chat | 5/1/18 – 8/1/18 | Lynx OR Blackstone OR LaSalle OR (massage w/5 data) OR (cherry w/5 pick*) OR (perfect w/5 outcome) OR (data w/5 scenarios) OR ((IBDC AND (Lynx OR Blackstone OR LaSalle)) |
| Kravetz | Barclays email and Bloomberg Chat | 1/1/17 – 8/1/18 | • (Brian or LaBelle or "La Belle" or BLB) AND (Willis AND (premarket* OR "pre-market*" OR "pre market" OR "pre marketing" OR "pre marketed" OR misrep* OR premature* OR RBC OR Blackstone OR stack OR "capital structure" OR "moody's"))<br><br>• (Brian OR LaBelle OR "La Belle" OR BLB) AND (("225 Park" OR "233 Park" OR "225-233") AND ("balance sheet*"))<br><br>• (Brian OR LaBelle OR "La Belle" OR BLB) AND (fail* OR attend OR miss*) AND (pipeline OR meeting)<br><br>• (Brian OR LaBelle OR "La Belle" OR BLB) AND ((CS01 OR CSO1) AND (*ercole* OR cap OR limit)) |
| Bolles Cohen DeVoti | Barclays email | 8/1/17 - 8/13/18 | (Brian OR LaBelle OR "La Belle" OR BLB) AND (attend* OR absen* OR awol OR performance OR fail* OR frustrat* OR investigat* OR promot* OR terminat* OR Twist OR Tweed OR retaliate* OR (compliance w/5 (complain* OR report* OR Larry OR Kravetz OR Eric OR Wu))) |
| ==Bolles Cohen DeVoti== | ==Barclays email== | ==1/1/18 - 8/13/18== | ==(Brian OR LaBelle OR "La Belle" OR BLB) AND (Larry OR Kravetz OR Wiele)== |

5

C.    <u>Barclays has offered to complete additional ESI searches.</u>

While Barclays contends that the ESI Searches listed above, some completed and others underway and currently in progress, more than meet its obligation to engage in a reasonable search proportional to the needs of this case, it has continued to work proactively to reach agreement with Plaintiff on reasonable additional ESI searches.

After repeatedly refusing to engage with Barclays on a discussion of search terms, Plaintiff finally provided a "counter proposal" on March 17, 2021. Unfortunately Plaintiff's counterproductive response only served to expand the disputed search parameters by broadening the searches Plaintiff had previously proposed on November 19, 2020, without adding search terms parameters needed to properly circumscribe any future ESI searches in light of Rule 26 considerations.

Ultimately, after lengthy efforts to confer telephonically and by email, Barclays offered to conduct yet another set of ESI Searches as reflected in the chart below. Barclays' additional ESI Search proposal is a significant expansion of its prior proposals and searches that are already underway and have been offered to Plaintiff with the sole purpose of reaching an agreement to finally—and at long last—close the door on 18 months of ESI discovery. These proposed additional searches, set forth in the chart below, represent Barclays' concessions offered throughout ongoing meet and confers with Plaintiff's counsel. Barclays' purpose was to accommodate Plaintiff's stated discovery objective of sweeping up any additional documents regarding Plaintiff's performance, complaints and related investigations and termination, while eliminating tangential and cumulative custodians, and common terms likely to generate mishits.

| Custodian(s) | Source(s) | Time Frame | Proposed Search Terms |
|---|---|---|---|
| Richard Atterbury<br>Amanda Cohen<br>Dennis Bolles<br>Monica De Martin<br>Elyse Gonzalez<br>Ho Chan Lee<br>David Thwaites | Barclays email | January 1, 2018 – August 13, 2018 | "BLB" OR "La Belle" OR "LaBelle" OR "Twist" OR "Tweed" |
| Larry Kravetz | Barclays email and Bloomberg Chat | November 1, 2015 – March 1, 2016 | To/From: Joe McGrath containing the search terms:<br><br>"BLB" OR "La Belle" OR "LaBelle" |
| Brian LaBelle | Barclays email and Bloomberg Chat | February 15, 2018 – March 15, 2018 | "recuse" |
| Jessica Itzkowitz | Barclays email | 9/9/2013 – 9/23/2013 | To/From: "Larry.Kravetz@barclayscapital.com" |

6

Firm:52963568

|  |  | 8/4/2012 – 8/18/2012 |  |
|--|--|--|--|

Barclays' offer more than meets its obligation to engage in a reasonable search for documents and should conclude the search for ESI in this case.

## II.  Plaintiff Fails to Justify His Request to Add Peggy Campbell as an ESI Custodian.

In the wake of the Court's March 16, 2021 Order, Plaintiff now seeks to add Barclays' former in-house counsel, Peggy Campbell, as a separate document custodian to search for any discussion related to Plaintiff without making the requisite demonstration that Ms. Campbell is likely to have any unique, non-privileged documents that either have not already been searched for and produced pursuant to the Court's March 16, 2021 Order, or that will be searched for and produced pursuant to the ESI Searches already underway and those offered by Barclays to move discovery in this matter towards completion.  As such, Plaintiff's motion to compel such cumulative, duplicative and unduly burdensome searches should be denied.

When a party seeks production of ESI, courts recognize that the responding party is "best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing [its] own electronically stored information." *Hyles v. New York City*, No. 10-3119(AT)(AJP), 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) (quoting *The Sedona Principles: Second Edition*, Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 6). Courts also recognize that "[t]he requesting party has the burden on a motion to compel to show that the responding party's steps to preserve and produce relevant electronically stored information were inadequate." *Id.* at n.4 (quoting *The Sedona Principles: Second Edition*, Principle 7).

If the requesting party seeks to have the responding party search the ESI of additional custodians, the requesting party "must demonstrate that the additional requested custodians would provide *unique* relevant information by providing evidence that there are *unique* responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians." *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, No. 14-9372 (GBD) (HBP), 2018 WL 2215510, at *9 (S.D.N.Y. May 15, 2018) (internal quotations omitted) (emphasis added). Indeed, the requesting party must demonstrate a "particularized need for discovery" from proposed additional custodians. *Id.* at *10.  Where the requesting party provides "no evidence that there are *unique* responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians," its request for discovery from additional custodians must be denied. *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (emphasis added); *see also Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-0293 (LTS) (JCF), 2017 WL 2305398, at *3 (S.D.N.Y. May 18, 2017) (denying plaintiff's request to compel search for ESI from additional custodians where plaintiff failed to show that proposed custodians would have unique relevant information, and the cost and burden of requested searches would be disproportionate).

7

Firm:52963568

Here, Plaintiff does not – and cannot – meet his burden to show why Ms. Campbell is a unique custodian who would possess additional non-cumulative responsive information. Instead, relying on documents *already produced* by Barclays, he merely argues that Ms. Campbell was one of several other individuals "involved in" revising Plaintiff's 2017 performance review, the internal investigations into concerns raised by Plaintiff, and Plaintiff's termination. But as documents produced by Barclays (and reviewed by the Court *in camera*) make clear, Ms. Campbell did not play a primary role in any of these matters; rather, her counsel – privileged or not – was intermittently sought by principle players in Human Resources ("HR") (Elyse Gonzalez, Marie Ann Devoti, and Amanda Cohen), Employee Relations ("ER") (Tarik Lacene and Ho Chan Lee), Compliance Investigations (Monica De Martin). Each of these principle players is already a custodian that Barclays has searched or has agreed to search.

There is simply no reason that relevant facts regarding any non-privileged advice Ms. Campbell provided either has not or cannot be obtained from these non-attorney custodians to whom she provided it, *i.e.*, those individuals who were communicating with Plaintiff directly and/or made the relevant decisions regarding Plaintiff, who are already ESI custodians. Indeed, Barclays has already offered to search the emails of additional HR custodians involved in Plaintiff's termination (including Ms. Cohen) as well as the ER and Compliance personnel who conducted the investigations into the concerns raised by Plaintiff (including Mr. Lee and Ms. De Martin) for any communications referencing Plaintiff and/or the investigations during the relevant time period. These searches have been crafted such that they will necessarily capture any relevant communications between these individuals and Ms. Campbell. Accordingly, Plaintiff's request to add Ms. Campbell as an ESI custodian is unreasonably cumulative and should be denied. *See* Fed. R. Civ. P. 26(b)(2)(C) ("the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that [] the discovery sought is unreasonably cumulative or duplicative . . . .").

### III. Plaintiff's Request for Additional Searches Limited by Plaintiff's Name Only are Not Reasonable or Proportional.

As set forth above, Barclays has made significant efforts to reach agreement with Plaintiff regarding the appropriate scope of remaining ESI Searches, including searches aimed at achieving Plaintiff's purported goal of locating additional documents related to Plaintiff's performance prior to January 2018. Nevertheless, Plaintiff asks this Court to order Barclays to engage in an unreasonable and unduly burdensome search for and review of every document sent to or from either Larry Kravetz or Brian Wiele for a period in excess of two years (August 1, 2016 through August 15, 2018) that mentions, in any way, and regardless of subject, the Plaintiff's name or initials (*i.e.*, "La Belle, LaBelle, BLB or BL").[3]

In other words, 18 months into ESI discovery, with significant discovery completed, new searches already underway, and with additional reasonable searches proposed by Barclays on the

---

[3] Mr. Kravetz is a Managing Director and Head of Primary Commercial Mortgage-Backed Securities ("CMBS") Origination at Barclays. Mr. Wiele is a Managing Director, Global Head of Securitized Products Syndicate. From 2016 until August 1, 2018, Plaintiff reported directly to Mr. Wiele, but performed most of his work for the desk Mr. Kravetz managed. Barclays does not contest that both Kravetz and Wiele are relevant document custodians as evidenced by the extensive ESI Searches Barclays has already completed, and new searches that it will complete, for both custodians.

Firm:52963568

table, Plaintiff is asking that Barclays now be required to review every electronic document that in any way mentions Plaintiff's name for any reason whatsoever over for period of over two years for two custodians.  The Court should deny Plaintiff's motion to compel this proposed search because it is patently unreasonable and fails to give any due consideration to concerns of proportionality under Rule 26.  *See Mirmina v. Genpact LLC,* No. 16-614, 2017 WL 2559733, at *3 (D. Conn. June 13, 2017) (finding that the plaintiff's request for "all documents referring to or regarding Plaintiff in any manner" or documents sent to or from two custodians "which concern, refer to, or relate to Plaintiff" was both unduly burdensome and failed to comport with Fed. R. Civ. P. 34's requirement that a search describe with "reasonable particularly" the items to be searched).[4]

As set forth in *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, 2018 WL 2215510, at *7:

> [J]udges in this District have instructed that "the standard [in ESI discovery] is not perfection, ..., but whether the search is reasonable and proportional." *Hyles v. New York City*, 10 Civ. 3119 (ATF)[sic] (AJP), 2016 WL 4077114 at *3 (S.D.N.Y. Aug. 1, 2016) (Peck, M.J.); *accord Winfield v. City of New York*, *supra*, 2017 WL 5664852 at *11 ("In any ESI review, 'the Federal Rules of Civil Procedure do not require perfection.' "), quoting *Moore v. Publicis Groupe*, 287 F.R.D. 182, 192 (S.D.N.Y. 2012) (Peck, M.J.); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sees., LLC*, 685 F. Supp. 2d 456, 461 (S.D.N.Y. 2010) (Scheindlin, D.J.) ("Courts cannot and do not expect that any party can meet a standard of perfection [in ESI discovery]."). Thus, a party requesting discovery may not be entitled, "under the rules of proportionality, to every single [relevant] document." *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, supra, 2013 WL 4838796 at *3.

Plaintiff has advanced no substantive argument that unique and relevant information regarding Plaintiff's performance will not be gathered by the searches Barclays has already completed or has proposed to complete.  Instead, Plaintiff's request is grounded only in pure conjecture and the vague hypothetical, notion that more relevant documents regarding Plaintiff's performance might, possibly, exist beyond those captured or to be captured by Barclays reasonable and proportionate searches; indeed, Plaintiff's stated objective in advancing his unreasonable search is to "ensure that ***all relevant documents*** are produced."  (ECF No. 120 at 5) (emphasis added).

Plaintiff's requested search for, and Barclays review of, every document held by Mr. Kravetz or Mr. Wiele as custodians mentioning Plaintiff in order to search exhaustively for "all relevant documents" is simply not contemplated under Rule 26. "[P]erfection in ESI discovery is

---

[4] During the parties August 19, 2020 conference, the Court noted the overbroad nature of such a search:  Aug. 19, 2020 Tr. 70:17-22 ("I agree that's overbroad if it just relates to [Plaintiff's] employment as opposed to termination because he might have had, you know, hundreds of thousands of emails over the course of the employment and I don't know that those should be produced.").

not required; rather, a producing party must take reasonable steps to identify and produce relevant documents." *Winfield v. City of New York*, No. 15-5236 (LTS) (KHP), 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017). Here, Barclays' completion of the Court-ordered searches[5] in conjunction with its searches proposed on September 29, 2020, already underway, and with Barclays' proposed new searches, meet—if not exceed—Barclays' duty to take reasonable steps to identify and produce relevant documents.

Plaintiff has failed entirely to address how his proposed open-ended search, which is devoid of any limiting search terms beyond multiple iterations of Plaintiff's name, is at all proportional to the needs of this case. Moreover, Plaintiff's argument that "Defendant has offered up no such search terms" (ECF No. 120 at 5) is entirely disingenuous. Since Plaintiff proposed his open-ended search on November 19, 2020, Barclays repeatedly asked Plaintiff to describe, specifically, the documents he thinks have not been captured by Barclays' previous or proposed searches in order to inform potential search terms. Plaintiff has never provided that information, and, instead looked to Barclays to complete the work, stating in response to Barclays entreaties: "I don't have any additional information to provide you in response to your request. As far as I am concerned the ball is in your court." (Dec. 23, 2020 email from Plaintiff's counsel).

Barclays highlighted this ongoing problem during the parties' December 21, 2020 conference with the Court:

> MS. McMANUS: I think -- well, to help guide our conversations, your Honor -- and perhaps this isn't something you can opine on -- but, again, to your point, defendant should be willing to search for items in additional areas of inquiry that the plaintiff needs for his case. I think one of the fundamental disconnects is our kind of position that we need additional search terms in order to do that. And that's where sort of we're kind of coming -- we're hitting --
>
> THE COURT: Because, otherwise, you're looking at too big a universe?
>
> MS. McMANUS: Correct.
>
> THE COURT: Right. Well, Mr. Barentzen, you have to think about that because I know, you know, the defendant is a corporation and you're just one person, but there's still a matter of proportionality in terms of what the likely return is going to be on whatever you're asking them to do. So if you say, you know what, I think there's

---

[5] Contrary to Plaintiff's argument, the fact that Judge Aaron ordered Barclays to complete a search for custodian Mr. Kravetz for variations on Plaintiff's name and abbreviations thereof for a one-year period (a search and related production that Barclays has completed) only furthers Barclays' argument that an expanded search of Mr. Kravetz and Mr. Wiele for an additional two-year period is unreasonable and not proportional to the needs of the case at this advanced stage of discovery. The Court may recall that for the one-year period search of Mr. Kravetz, Barclays had to review over 10,000 hits. Doubling both the number of custodians and the number of years would only exponentially increase the number of hits to achieve Plaintiff's unwarranted (and speculative) goal of gathering every relevant document.

> five documents out there and I want to ask you to look at 10,000 to find them, that may not be reasonable. And if you say, well, there's five documents, and we can do a search that gives us 100 documents and look in those, that would be something reasonable. All right? So you have to think about the fact that I don't view the defendant as being required to do everything possible to find a document that you want; they only have to do what's reasonable.
>
> MR. BARENTZEN: Understood, Your Honor. And I mean, our searches are based on orders from Judge Aaron and time frames established at the previous hearing. We've attempted to be reasonable, but I'm more than happy to go back and reexamine it and be even more reasonable.
>
> THE COURT: Okay, well, unfortunately, Judge Aaron isn't on the case now, much as I would like him to be. So
>
> MR. BARENTZEN: Understood. Understood.
>
> THE COURT: -- you know, if he ruled on something and I'm not going to view it as law of the case because he said it's okay to make the defendants the first round look at 10,000 documents doesn't mean I'm going to make him do it now.
>
> MR. BARENTZEN: Understood. I understand. I will our position, we will be in our motion, and we intend to be reasonable, as reasonable as we can be.

(ECF No. 102, Dec. 21, 2020 Tr. 30:24-19).

Despite the above-quoted discussion, Plaintiff has *never* moved past his own broad generalizations that he wants more "performance" documents from custodians Mr. Kravetz and Mr. Wiele, which may or may not even exist, and he has failed to provide any limiting search terms to create a reasonable and proportional search for the same. The extremely costly burden of having Barclays search for hypothetical documents outweighs any speculative benefit to Plaintiff and is therefore, uncalled for under Rule 26. *See Vaigasi*, No. 11-5088, 2016 WL 616386, at *16 (denying the plaintiff's additional request for ESI as unduly burdensome where the plaintiff "offers nothing to support [his] contention other than his personal opinion that there must be additional non-privileged documents.").

Plaintiff's repeated call to the potential relevance of documents that may be located via an exhaustive, time consuming, and costly search of all communications mentioning Plaintiff from custodians Mr. Kravetz and Mr. Wiele is unavailing in light of the searches and production Barclays has completed, is currently completing, and has offered to complete, and proportionality considerations of "marginal utility," burden, and expense. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) (denying

11

the plaintiff's motion to compel an additional search for arguable relevant documents where the minimal benefit of such discovery was outweighed by the burden of production on the defendants).

### IV. Plaintiff's Request for Audio Recordings Should Be Denied Because the Burden Imposed by Producing Such Data Would Far Outweigh Any Benefit to Plaintiff.

Plaintiff seeks audio recordings of Mr. Wiele's calls that concern "Mr. LaBelle, his performance and his termination." (ECF No. 120 at p. 6). To that end, Plaintiff requests that the Court compel Barclays to search for and review recordings of:

- all calls between Messrs. Wiele and Kravetz from January 4, 2018 to January 29, 2018 (a 25 day period); and

- all calls between Mr. Wiele and Mr. Kravetz or Ms. Cohen from March 1, 2018 to June 12, 2018 (a 103 day period).

Even if searching and reviewing such audio recordings would yield relevant information, discovery should nevertheless be limited where the burden outweighs the benefit. Indeed, Rule 26 provides that a court *must* limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). With respect to ESI such as the audio recording data at issue here, the Federal Rules of Civil Procedure provide that: "[a] party need not provide discovery of electronically-stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).

### A. Barclays has already searched or agreed to search for responsive ESI from more accessible sources.

As explained above, Barclays has already searched or agreed to search the emails of Mr. Wiele, Mr. Kravetz, and Ms. Cohen for communications concerning Plaintiff's performance and termination during the period from January 4, 2018 to June 12, 2018 (and beyond). The costs incurred to locate, review, and produce the responsive documents produced already are substantial. However, the cost and burden associated with searching for and reviewing audio recordings far exceeds that of other ESI.

### B. Collection and review of the requested audio recording records would impose a substantial burden on Barclays that is not proportional to the needs of this case.

Plaintiff vastly underestimates – or dismisses altogether – the very real and substantial burden imposed by his request for audio recording information. Barclays' audio recording records, unlike other ESI, are not word searchable, and recordings can be identified and collected only by custodian and date. Barclays' audio infrastructure was designed with a focus on capturing audio, as opposed to audio retrieval. Barclays, therefore, encounters significant system and internal limitations with bulk audio retrieval requests such as the one Plaintiff requests in this matter. Several types of audio may be available for each custodian, including separate handset and

12

speakerphone lines. In order to identify the audio available for a particular custodian for the relevant time period, an extensive search across various audio databases is required to identify devices utilized by the custodian. Once the scope of recorded devices is identified, additional searches must be conducted to locate the audio records for the requested time periods. Furthermore, separate searches must be conducted for each recorded audio device. Any identified records must then be exported from the relevant system, which can be a manual and time consuming process. There are also system limitations on the amount of audio data that can be extracted at one time. For certain systems, bulk retrieval is not possible and audio files must be downloaded individually. Depending on the volume of audio records for the requested date period, these searches may need to be divided into shorter time periods to enable successful extraction of the data. Throughout this whole process, quality control assessments are conducted to ensure searches and extractions are completed without error. Additional time is often required to investigate, document, and resolve data exception issues. Once collected, quality checked and confirmed, the data is transferred to Barclays' vendor for processing and made available for review. The review will determine if calls are "responsive" to a request, however this *requires listening to each individual call*, as the volume of audio files cannot be reliably decreased through the use of search terms or other analytic tools that are available for other text-based ESI, such as emails.

Here, to search for any responsive recordings of Mr. Wiele's calls Plaintiff believes *may* exist, would require Barclays to identify and export data for the requested periods. Then, it would be necessary for attorneys to listen individually and painstakingly to every incoming and outgoing call Mr. Wiele made or received on his recorded line(s) for any purpose whatsoever over an aggregate period of 128 days.

> C.  Barclays' review and production of audio recordings in response to a separate and distinct request from the SEC informs and supports Barclays' burden argument.

Plaintiff's reference to Barclays' production of audio recordings to the Securities and Exchange Commission ("SEC") is misleading. As Barclays has repeatedly explained to Plaintiff, the SEC requested the production of, *inter alia*, "audio recordings" related to the transaction referred to in this litigation as the "Client 1" transaction. In response, Barclays agreed to and did search for, review, and produce responsive handset audio recordings, including from custodian Mr. Wiele, for the period from May 1, 2018 to August 1, 2018. Review of Mr. Wiele's handset recordings for this 92 day period (substantially shorter than the 128 day period Plaintiff seeks here) required a team of attorneys to listen to over 1,700 calls in order to determine whether they related to the Client 1 transaction and were thus responsive to the SEC's request.[6] Only roughly one percent of the calls reviewed were responsive. As a result of this effort, Barclays has already produced 19 recorded conversations from Mr. Wiele's telephone line from the critical final three months of Plaintiff's employment that are responsive to Plaintiff's document requests.

Even if Barclays were to limit its review of Mr. Wiele's audio recording data for the 128 day period requested by Plaintiff to handset (not speakerphone) audio recordings, Barclays'

---

[6] The SEC's request, Barclays' counsel's (Barclays is represented by WilmerHale in connection with the SEC matter) written response to the SEC detailing the efforts undertaken to review and produce responsive audio, and the responsive audio files themselves, have all been produced to Plaintiff in this litigation.

13

attorneys would likely need to listen to well over 2,000 calls in order to determine whether they were responsive to Plaintiff's requests – an exercise that would require potentially hundreds of attorney hours. By any rational measure, that is a disproportionate burden, entirely unjustifiable where numerous searches for other ESI relating to Plaintiff's performance and termination have been (and continue to be) conducted. *See Fernandez v. Kinray, Inc.*, No. 13-4938 (LDH) (SMG), 2017 WL 744562, at *2 (E.D.N.Y. Feb. 23, 2017) (denying plaintiff's motion to compel production of additional ESI "where the relevance of the emails sought is at best quite limited, and there is substantial other evidence that bears more directly on the core issues in dispute, including the testimony of witnesses with direct knowledge of the facts in dispute . . . ."); *Blackrock*, 2018 WL 2215510, at *7 (examining special challenges that ESI presents, "including the substantial likelihood that the data possessed by the responding party is voluminous, stored in multiple formats and is duplicative across custodians" and noting that "the standard [in ESI discovery] is not perfection, ...but whether the search is reasonable and proportional") (internal citations omitted). Accordingly, Plaintiff's request should be denied, or at a minimum he should be required to bear the cost of such a disproportionate pursuit, which may yield no fruitful results.

      D.      <u>Plaintiff's alternative suggestions that Barclays produce a call "log" or allow Plaintiff to review audio recording information for responsiveness are not feasible.</u>

Plaintiff's alternative suggestion that Barclays should "at least provide a log of all of Mr. Wiele's calls from January 1, 2018, through Mr. LaBelle's termination" on August 1, 2018, is unavailing. Barclays does not maintain a "log" of recorded calls in the ordinary course of business. For a log of this type to be created, it would require, in the first instance, a search of devices assigned to Mr. Wiele, then a search of servers where his devices were recorded. A log would then be created by collating information from the servers identified. This would be a costly and time consuming process for an 8-month period of time. Moreover, the Federal Rules of Civil Procedure do not require Defendants to create and produce reports that do not exist, and courts have denied such discovery requests even where the items requested would be directly relevant. *See United States v. U.S. Alkali Export Ass'n, Inc.*, 7 F.R.D. 256, 259 (S.D.N.Y. 1946) ("Rule 34 is to be used to call for the production of documents already in existence, and in the possession or control of an adverse party, and not to require an adverse party to prepare a written list to be produced for inspection."); *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000) ("Rule 34 only requires a party to produce documents that are already in existence"; a party "is not required to prepare, or cause to be prepared, new documents solely for their production") (internal quotations and citation omitted).

Similarly, Plaintiff's counsel's "offer" to review recordings "himself" is unworkable. It is highly likely that many of the recordings would contain confidential information regarding Barclays and its clients unrelated to any transaction or disputed issue in this litigation. Moreover, even setting aside concerns or confidentiality or relevance, Barclays would need to review the data for privilege prior to disclosing them to Plaintiff. In short, there are no viable shortcuts to alleviate the substantial burden imposed by Plaintiff's demand for audio recording data.

## **CONCLUSION**

      For the foregoing reasons, Plaintiff's motion to compel unduly burdensome discovery not proportional to the needs of this case should be denied in its entirety.

                                          Respectfully submitted,

                                          */s/ Allen B. Roberts*
                                          Allen B. Roberts

cc: Steven Barentzen, Esq. (via ECF)

Firm:52963568