UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIAN LA BELLE,                                    :
                                                   :    OPINION AND ORDER
                         Plaintiff,                :
                                                   :    19 Civ. 3800 (JPO) (GWG)
        -v.-                                       :
                                                   :
BARCLAYS CAPITAL INC.,                             :
                                                   :
                         Defendant.                :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Brian La Belle has sued defendant Barclays Capital Inc. ("Barclays") for unlawful retaliation under the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745. See generally Amended Complaint, filed July 21, 2021 (Docket # 147) ("Comp.").[1] La Belle has moved for discovery sanctions against Barclays pursuant to Fed. R. Civ. P. 37, 28 U.S.C. § 1927, and the Court's inherent authority.[2] For the reasons explained below, La Belle's motion is denied.

I.      BACKGROUND

La Belle was employed by Barclays from July 2015 until his termination in August 2018. See Comp. ¶¶ 8, 59. La Belle alleges that while at Barclays he reported violations of law and

---

[1] The Amended Complaint renders plaintiff's name both as "La Belle" and "LaBelle." For consistency, we use "La Belle."

[2] See Notice of Motion for Discovery Sanctions, filed Oct. 21, 2021 (Docket # 181); Memorandum of Law in Support, filed Oct. 21, 2021 (Docket # 182) ("Pl. Mem."); Declaration of Ronald M. Green in Opposition, filed Oct. 28, 2021 (Docket # 188) ("Green Decl."); Memorandum of Law in Opposition, filed Oct. 28, 2021 (Docket # 189) ("Def. Mem."); Reply Memorandum of Law in Support, filed Nov. 1, 2021 (Docket # 190) ("Pl. Reply"); Declaration of Brian La Belle, filed Nov. 1, 2021 (Docket # 191) ("La Belle Decl.").

other misconduct. See Comp. ¶¶ 11-59. La Belle alleges that thereafter, he faced retaliation from his supervisors — principally, Larry Kravetz, Brian Wiele, and Eric Wu — that included his termination. See id. Barclays denies these allegations and asserts it properly terminated La Belle. See Answer, filed Aug. 4, 2021 (Docket # 153).

II. DISCUSSION

La Belle seeks sanctions against Barclays on three grounds: (1) that Barclays misled the Court and wasted plaintiff's time in relation to the existence of recordings of Wiele's phone calls and violated a Court order relating to those recordings, see Pl. Mem. at 1-8, 13-17; Pl. Reply at 3-5; (2) that Barclays engaged in spoliation by failing to preserve notebooks used by La Belle during his employment; see Pl. Mem. at 11-13, 17-19; Pl. Reply at 9-10; and (3) that Barclays engaged in spoliation by failing to preserve text messages to or from Kravetz and Wiele, see Pl. Mem. at 8-11, 17-19; Pl. Reply at 5-8. We address each ground next.

    A.    Recording of Wiele's Phone Calls

        1.    Facts

Barclays recorded the phone lines of certain employees, including Wiele. See Letter from Steven Barentzen, filed Apr. 22, 2021 (Docket # 120), at 5. On April 22, 2021, La Belle requested that this Court direct Barclays to produce or provide a log of recordings from Wiele's phone line from January 1, 2018 to August 15, 2018. See id. at 5-6. Barclays opposed the request on the ground that such an undertaking would be unduly burdensome under Fed. R. Civ. P. 26(b)(2). See Letter from Allen B. Roberts, filed Apr. 29, 2021 (Docket # 121) ("Apr. 29 Letter"), at 12-14. Barclays noted that creating a log of recordings would require "a search of devices assigned to Mr. Wiele, then a search of servers where his devices were recorded," information which would then need to be collated to create the log. Id. at 14. In other words,

creating a log of recordings required Barclays to undergo a "full collection of the [recording] data." Transcript from May 7, 2021 Discovery Conference, filed May 10, 2021 (Docket # 124), at 28:21-23. La Belle then asked for, and Barclays agreed to produce, a "phone bill" or "record of[] every single phone call," so La Belle could identify calls he wanted produced, and Barclays would thereafter determine whether those calls were recorded and, if so, produce them to La Belle. Id. at 30:10-32:13. The Court ordered production of this "log" noting that it was not yet ruling "that anyone is ever going to have to listen to any phone call." Id. at 34:6-14.

On May 28, 2021, Barclays provided La Belle with Wiele's phone billing records from January 2018. At the time, Barclays told La Belle:

> As previously stated, the billing system is not aligned to the audio recording systems and is not Barclays' official record of audio call recordings (as explained in our briefing and during the conference with the Court).

Email from James Mackinson to Steven Barentzen, dated May 28, 2021, Exhibit B to Green Decl. (Docket # 188-2). Barclays provided La Belle with the remainder of the billing records on June 4, 2021. Email from Elizabeth McManus to Steven Barentzen, dated June 4, 2021, Exhibit C to Green Decl. (Docket # 188-3). Again, Barclays noted that "the billing system is not aligned to the audio recording systems and is not Barclays' official record of audio call recordings." Id. That same day, Barclays made an identical representation to the Court when informing the Court that the billing records had been fully produced. See Letter from Allen B. Roberts, filed June 4, 2021 (Docket # 130), at 2, 2 n.1.

On July 21, 2021, La Belle sought an order directing Barclays to produce recordings of 48 calls to or from Wiele. See Letter from Steven Barentzen, filed July 21, 2021 (Docket # 148), at 1-2. La Belle identified these calls by reviewing the billing records and comparing calls on the records against documents produced by Barclays. See id.; see also Pl. Mem. at 5; Def. Mem. at

5. Barclays opposed the request on burdensomeness grounds, stating: "Retrieving any additional available audio for the January 5, 2018 to April 30, 2018 time period would require searching numerous databases and then exporting any located files through a time-consuming and sometimes manual process." Letter from Allen Roberts, filed July 23, 2021 (Docket # 149) ("July 23 Letter"), at 1-2. Barclays noted that it had previously collected recordings of Wiele's calls from May 1, 2018 forward in connection with an SEC request, and Barclays agreed to produce 22 such calls to La Belle. See id. at 2. On August 3, 2021, the Court rejected Barclays' burdensomeness objection and ordered Barclays to "search for and produce the remaining 26 phone calls identified by" La Belle. Order of August 3, 2021 (Docket # 152) ("Aug. 3 Order"), at 1-2. On September 15, 2021, La Belle moved to compel the production of the 26 calls within two weeks. See Letter from Steven Barentzen, filed Sept. 15, 2021 (Docket # 161), at 3. Barclays opposed the motion, arguing that the two week timeframe would place an undue burden on Barclays because while Barclays was "working to identify and produce any relevant recordings that may exist of the 26 calls," "retrieving and searching for audio recording data is a time-consuming process." Letter from Ronald Green, filed Sept. 17, 2021 (Docket # 162), at 3. On September 20, 2021, the Court ordered that the 26 calls be produced by October 15, 2021. Order of September 20, 2021 (Docket # 163) ("Sept. 20 Order").

On October 8, 2021, Barclays informed La Belle that it had "completed multiple searches in an effort to retrieve any available audio recordings of the 26 calls to/from custodian Brian Wiele . . . within the period from January 5, 2018 to March 16, 2018 and confirmed that Mr. Wiele's phone was not recorded during that time." Email from Elizabeth McManus to Steven Barentzen, dated October 8, 2021, Exhibit D to Green Decl. (Docket # 188-4). Barclays additionally noted "that Mr. Wiele's phone was not subject to recording requirements at any

point in 2018.  Rather, his phone was only temporarily recorded between late April and August of 2018 due to an error that occurred when the Syndicate Securitization team was migrated from Cisco phone systems hardware to IPC Turret hardware."  Id.

La Belle maintains that the information provided to him on October 8, 2021 "not only contradicts what Barclays previously told Plaintiff and the Court" but "is completely inconsistent with Barclay's [sic] relentless arguments over the previous two years that it should not have to produce the calls, or even information concerning the calls, because it would be too burdensome to do so."  Pl. Mem. at 7.  La Belle emphasizes that "Barclays at no point during the process stated that recordings of these calls don't exist or that Mr. Wiele's phone line did not need to be recorded."  Id.  Barclays responds that it did not know whether the recordings in fact existed until it went through the "collection and review process that Barclays repeatedly explained would be necessary . . . to determine whether [the] recordings existed."  Def. Mem. at 8.

Although La Belle seeks a variety of sanctions in connection with Barclays' failure to produce the 26 calls, see Pl. Mem. at 15-17, we decline to impose any sanction against Barclays or its attorneys because La Belle has not established that Barclays violated its discovery obligations or an order of this Court.

       2.       Governing Law

La Belle seeks sanctions under Fed. R. Civ. P. 37(a)(5), the Court's "inherent power," and 28 U.S.C. § 1927.  See Pl. Mem. at 13-14.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion for an order compelling disclosure or discovery is granted,

> the court must, after giving an opportunity to be heard, require the
> party or deponent whose conduct necessitated the motion, the party
> or attorney advising that conduct, or both to pay the movant's

> reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>
>> (iii) other circumstances make an award of expenses unjust.

Notwithstanding Rule 37(a)(5)(A)'s limitation to an award of expenses, plaintiff asks for other sanctions. See Pl. Mem. at 15-17. In support, La Belle appears to rely on Rule 37(b)(2), see id. at 13, 15-17, which provides that a party who "fails to obey an order to provide or permit discovery" may be subject to sanctions including but not limited to "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). In all such cases, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Id. Finally, a court retains inherent authority to impose sanctions as necessary "to manage its own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); accord Chambers v. NASCO, Inc., 502 U.S. 32, 43-46 (1991).

The Second Circuit has held that "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Enmon v. Prospect Cap. Corp., 675 F.3d 138, 144 (2d Cir. 2012) (citation and punctuation omitted). Courts therefore commonly consider sanctions under the court's inherent powers and § 1927 as part of the same inquiry. See id. at 144-49; Schlaifer Nance & Co., Inc. v. Est. of Warhol, 194 F.3d 323, 336 (2d Cir. 1999); United States v. Prevezon Holdings, Ltd., 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018).

To impose sanctions under either § 1927 or the Court's inherent powers, there must be clear evidence that "(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, motivated by improper purposes such as harassment or delay." Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (per curiam) (quotation omitted); accord Prevezon Holdings, 305 F. Supp. 3d at 478-79. The Second Circuit has explained that

> [c]onduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue. [Schlaifer, 194 F.3d] at 337. A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings. Id.; Eisemann[], 204 F.3d [at 396.]

Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009).

3. Application

La Belle has not shown that Barclays acted improperly with respect to the Wiele recordings. After the Court ordered Barclays to collect and produce the 26 calls, see Aug. 3

Order at 2; Sept. 20 Order, Barclays underwent the investigatory process it had repeatedly described previously and determined that the calls requested by La Belle were not recorded. See Exhibit D to Green Decl. (Docket # 188-4). La Belle believes Barclays acted improperly by not divining that its process would lead to discovering that none of the 26 calls were recorded. But La Belle has not shown that Barclays could have known that the recordings did not exist before it collected and reviewed the recording data. Additionally, Barclays' earlier refusals to examine the recordings were based on burdensomeness objections, see Apr. 29 Letter at 12-14; July 23 Letter at 1-2, which — while ultimately partially unsuccessful, see Aug. 3 Order at 1-2 — were nonetheless substantially justified and not unreasonable in light of the extensive time and effort required to collect and review the recorded calls. See Fed. R. Civ. P. 26(b)(2)(B) (a producing party "need not provide discovery of electronically stored information ["ESI"] from sources that the party identifies as not reasonably accessible because of undue burden or cost"); Klein v. Torrey Point Grp., LLC, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (refusing to award attorneys' fees under Rule 37(a) when defendant initially withheld records on relevance grounds because although "[d]efendant's relevancy argument . . . proved unavailing, it was not without substance"). Upon completing its review of the phone recording data and notifying La Belle that no additional responsive calls existed, Barclays fulfilled its obligations to La Belle and under the Court's Order. See generally Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 152 (S.D.N.Y. 1997) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist . . . should resolve the issue of failure of production." (quotation omitted)).

For the same reasons, La Belle cannot prevail under 28 U.S.C. § 1927 or the Court's inherent powers. Critically, La Belle has offered no clear evidence of bad faith. We also reject

La Belle's alternative argument that Barclays violated the "spirit" of the Court's Orders. See Pl. Reply at 4. Thus, La Belle's motion for sanctions as to Barclays' failure to produce the Wiele recordings is denied.

    B.    Spoliation

La Belle seeks sanctions — specifically, adverse inference instructions — for the alleged spoliation of La Belle's notebooks and of text messages sent by Barclays' employees. See Pl. Mem. at 8-13, 18-19.

        1.    Governing Law

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks omitted) (quoting Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir. 2007)). A party seeking sanctions for spoliation has the burden of establishing the elements of a spoliation claim. See Residential Funding, 306 F.3d at 107 (citation omitted); accord John Wiley & Sons v. Book Dog Books, LLC, 2015 WL 5769943, at *6 (S.D.N.Y. Oct. 2, 2015) (citations omitted). These elements are "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks omitted) (quoting Residential Funding, 306 F.3d at 107). With respect to ESI — for example, text messages — Rule 37(e) provides:

> If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take

>reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>>(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>>(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>>(A) presume that the lost information was unfavorable to the party;
>>>
>>>(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>>(C) dismiss the action or enter a default judgment.

Whether evidence is electronically-stored or not, "spoliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been lost." See Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017) (citations and internal quotation marks omitted).

Although Rule 37(e) does not specifically address the first element of spoliation, courts have recognized that the standard for showing that a party had an obligation to preserve evidence is the same for both ESI and non-ESI. See, e.g., Leidig, 2017 WL 6512353, at *8; accord Greene v. Bryan, 2019 WL 181528, at *4 n.5 (E.D.N.Y. Jan. 14, 2019). To meet the first element, La Belle must show that Barclays "had an obligation to preserve [the evidence] at the time it was destroyed." Chin, 685 F.3d at 162 (quotation omitted). "Identifying the boundaries of the duty to preserve [evidence] involves two related inquiries: when does the duty to preserve attach, and what evidence must be preserved?" Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (emphasis omitted). In the usual situation, "[t]he obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or

when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted); accord R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 23 (S.D.N.Y. 2010); Scalera v. Electrograph Sys., Inc., 262 F.R.D. 162, 171 (E.D.N.Y. 2009); Treppel v. Biovail Corp., 249 F.R.D. 111, 118 (S.D.N.Y. 2008). Thus, the duty to preserve evidence arises "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) (citations omitted); accord In re 650 Fifth Ave. & Related Props., 830 F.3d 66, 105 (2d Cir. 2016). A determination of "when the duty to preserve evidence arises may, under certain circumstances, be dependent upon the nature of the evidence." Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009).

2. Application

a. Notebooks

La Belle seeks to sanction Barclays for destroying notebooks La Belle used during his employment with Barclays.[3] La Belle claims that these notebooks would reveal he took thorough notes while at Barclays, disproving Barclays' contention that La Belle was fired in part

---

[3] La Belle occasionally refers to the notebooks of other Barclays employees. See Pl. Mem. at 13, 19. La Belle suggests that Barclays' failure to provide more than "a few pages from Sammy Hamididdin" indicates that these other notebooks were "lost or destroyed." Id. We find La Belle's scattered references to the notebooks of others insufficient to indicate that he is seeking spoliation sanctions as to those notebooks and, in any event, we would deny any such sanctions for the same reasons that apply to La Belle's notebooks and for the additional reason that there has been no showing of anything but the most minimal relevance of any such notebooks. See Khaldei v. Kaspiev, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) ("[B]ecause plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions.").

for inadequate notetaking.  See Pl. Mem. at 11-13, 19; Pl. Reply at 9-10.  La Belle contends that he kept the notebooks in his desk.  See Pl. Mem. at 12.  Barclays disputes that the notebooks ever existed, see Def. Mem. at 31-33, but explains in a footnote that any non-personal items in La Belle's desk would have been destroyed upon La Belle's termination, pursuant to Barclays' policy.  See id. at 13 n.3 ("In any event, typically, items in desks that are not personal to an employee are disposed of when an employee is separated from Barclays.").

  As a threshold matter, a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed.  See Dilworth v. Goldberg, 3 F. Supp. 3d 198, 202 (S.D.N.Y. 2014) (collecting cases).  We accept that La Belle has shown the notebooks existed on the day he was fired considering his detailed testimony describing the notebooks and their location.  See Deposition of Brian La Belle, dated May 25, 2021, Exhibit O to Pl. Mem. (Docket # 182-15), at 418-20.  However, La Belle has provided no evidence of their existence thereafter.

  As just discussed, the duty to preserve evidence may arise before suit is filed "when a party should have known that the evidence may be relevant to future litigation."  Kronisch, 150 F.3d at 126.  In such an instance, evidence must be preserved when litigation is "reasonably foreseeable."  In re Terrorist Bombings, 552 F.3d at 148 (quotation omitted); accord Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 435 (S.D.N.Y. 2010) (quotation and citations omitted).  Because La Belle has provided no evidence that the notebooks existed after the day he was fired, La Belle can prevail only by showing that Barclays had a duty to preserve the notebooks as of the date of his firing.

  La Belle points to three exhibits in support of his assertion that Barclays should have viewed litigation as reasonably foreseeable in August 2018, when La Belle was terminated, and thus should have preserved the notebooks on that date.  See Pl. Mem. at 11; Pl. Reply at 9.  First,

La Belle cites a May 10, 2018 email from Amanda Cohen, a Human Resources employee at Barclays.  See Pl. Mem. at 11.  In that email, Cohen responds to an inquiry from another Human Resources employee who asked whether La Belle's actions constituted whistleblowing.  Specifically, Cohen states:

> The approach will be to tag team with Compliance & ER (similar to what we did last time) so that we are covered on all bases if he files suit.  I made it clear on the call I do not want this blowing up into a bigger issue and we need to protect Larry and his reputation.  He has been doing the best he can with a difficult situation.

Email from Amanda Cohen to Anne Marie Devoti, dated May 10, 2018, Exhibit L to Pl. Mem. (Docket # 182-12) ("Cohen Email").  La Belle also cites handwritten notes from February 2018 indicating that a Barclays HR employee named Elyse Gonzalez spoke to La Belle and La Belle mentioned that he "engaged external counsel."  Pl. Reply at 9 (citing Handwritten Notes, dated Feb. 27, 2018, Exhibit G to La Belle Decl. (Docket # 191-7) ("Feb. 2018 Note")); see also Email from Elyse Gonzalez to Brian La Belle, dated May 8, 2018, Exhibit S to Pl. Mem. (Docket # 182-19), at *4 (identifying "Elyse" as "Elyse Gonzalez").  Finally, La Belle cites a transcript of a recorded August 1, 2018, conversation in which La Belle was notified of his termination.  See Pl. Reply at 9.  In particular, La Belle relies on a portion of the conversation in which he informed an HR representative that La Belle intended to have his lawyer review Barclays' non-solicitation policy.  See Transcript of August 1, 2018 Conversation Between Brian La Belle, Brian Wiele, and Traci Lavelle, dated Oct. 30, 2018, Exhibit H to La Belle Decl. (Docket # 191-8), at 7.

  Taken together or separately, these three exhibits are insufficient to show that litigation between La Belle and Barclays was reasonably foreseeable on the date of La Belle's termination — a showing necessary to charge Barclays with an obligation to preserve the notebooks.

As an initial matter, La Belle's August 1, 2018 remark regarding consulting his attorney on the non-solicitation policy gives no indication that he planned to file suit regarding his termination. As for the two remarks made by HR employees, Cohen's email — referring to protecting the company "if La Belle files suit" — suggests that the HR representative understood that a lawsuit was possible. Cohen Email (emphasis added). But it does not indicate that a lawsuit was in fact expected, let alone likely. See Fed. R. Civ. P. 37(e), 2015 Advisory Committee Note (in evaluating the first factor, "[c]ourts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant."). The second remark came months before La Belle was fired and merely indicates that a Barclays employee was aware that La Belle had retained an attorney. See Feb. 2018 Note. But the mere claim by an employee that he has hired an attorney does not suggest that a lawsuit is likely or should reasonably be expected, even if that employee is later terminated.

Accordingly, La Belle has not met his burden to establish spoliation as to his notebooks.

ii.   Text Messages

La Belle seeks sanctions in connection with Barclays' alleged failure to produce certain text messages to and from Kravetz and Wiele. See Pl. Mem. at 8-11, 18-19. Barclays states that it preserved and produced ESI on Barclays-issued devices but did not undertake those efforts as to any personal cellphones until "late 2019" in light of Barclays' policy forbidding its employees from conducting business on their personal cellphones. See Def. Mem. at 9-11. We will assume arguendo that there were some text messages on Kravetz and Wiele's cellphones during La Belle's employment that were relevant to La Belle's claims.

On July 17, 2019, La Belle's counsel requested from Barclays' counsel "All communications and documents to, from, by or between Larry Kravetz, Eric Wu, . . . [and]

Brian Wiele . . . concerning [La Belle]." Plaintiff's First Set of Document Requests, dated July 17, 2019, Exhibit M to Pl. Mem. (Docket # 182-13), at *5, *8. By September 2019, La Belle specifically informed Barclays by letter that this request included text messages, though La Belle did not mention that he was seeking a search of personal cellphones. See Letter from Steven Barentzen to Allen Roberts, dated Sept. 20, 2019, Exhibit E to La Belle Decl. (Docket # 191-5), at *2. Barclays concedes that by "late 2019" it was aware of La Belle's "interest in Mr. Kravetz's personal cellular device." Def. Mem. at 10, 26.

As to texts on Barclays-issued devices, Barclays asserts that any texts to or from Barclays-issued devices would have been subject to Barclays' 10-year document retention protocol. See id. at 9, 22. Barclays claims that it collected "all text message data preserved from the Barclays-issued devices for Mr. Kravetz and Mr. Wiele" on November 26, 2019. Id. at 9. It points to multiple pages of texts that it did produce, Bates-stamped D015038-D015049. See id. Although La Belle insists there must be additional texts, it is his burden to show that preservation did not occur. The only evidence La Belle has provided on this score is an email from Wiele to Kravetz asserting that a text was sent on a particular date, combined with the fact that this text was not produced. See Email from Brian Wiele to Larry Kravetz, dated May 4, 2018, Exhibit G to Pl. Mem. (Docket # 182-7). However, given that there was no testimony that Kravetz actually received this text, and the fact that Kravetz gave sworn testimony that his Barclays-issued device was unreliable with texting, see Deposition of Larry Kravetz, dated Oct. 27, 2021, Exhibit H to Green Decl. (Docket # 188-8), at 197, LaBelle's evidence is simply insufficient for this Court to find that texts were not produced to plaintiff from the Barclays devices because they had been destroyed.

With respect to the texts from personal devices, our consideration of this issue must be evaluated against the backdrop of the specific Barclays policy that prohibited employees from discussing company business on such devices without company approval. See Barclays' Business Communications Global Standard, Exhibit G to Green Decl. (Docket # 188-7), at 4. While it is a close question, we are not prepared to find that Barclays acted unreasonably in assuming that its employees complied with such a policy — notwithstanding LaBelle's claim that employees frequently violated the policy, see La Belle Decl. ¶¶ 2-9. Certainly, it is a better practice for a company to make a searching inquiry of all relevant employees to determine whether they violated a company policy regarding use of devices. But in light of the enormous demands that discovery places on any party, we do not find that Barclays acted unreasonably in assuming the policy was followed and limiting its document search to company-issued devices until the issue was brought to its attention. La Belle was obviously aware of the company policy and it would have been simple enough for his attorney to have specified in his July document request or his September letter to defense counsel that personal devices should be included in Barclays' search.

Accordingly, we find that the duty to search for messages on Wiele and Kravetz's personal cellphones did not arise until there was some indication that evidence relevant to plaintiff's claims was contained on the personal devices of those employees. The record is unclear as to when this occurred, though Barclays concedes that it was made aware in "late 2019." Def. Mem. at 10, 26. La Belle offers no evidence showing that any destruction of messages took place between that point and January 2020, when Barclays apparently undertook to search for such messages. See Declaration of Larry Kravetz, dated Oct. 27, 2021, Exhibit K to Green Decl. (Docket # 188-11) ("Kravetz Decl.") ¶¶ 4-5; Declaration of Brian Wiele, dated Oct.

27, 2021, Exhibit L to Green Decl. (Docket # 188-12) ("Wiele Decl.") ¶¶ 4-5.  Indeed, Barclays has submitted evidence to the contrary.  See Kravetz Decl. ¶¶6; Wiele Decl. ¶ 6.  The fact that a former employee, Eric Wu, may have preserved and produced messages from his own cellphone, see Text Messages between Eric Wu and Larry Kravetz, Exhibit I to Pl. Mem. **(**Docket # 182-9), does not show that there was any improper destruction by Kravetz or Wiele.  It is La Belle's burden to prove all elements of spoliation, including that evidence was destroyed with some degree of culpability.  Given the above, we cannot find that La Belle has met his burden as to the text messages.

IV.     CONCLUSION

For the foregoing reasons, La Belle's motion for sanctions (Docket # 181) is denied.

SO ORDERED.

Dated: January 13, 2022
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge